UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACOB BAILEY #930092,

    Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.

_____/

Hon. Paul L. Maloney

Case No. 1:23-cv-57

### REPORT AND RECOMMENDATION

This matter is before me on Defendants' Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 22.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **granted** and that Plaintiff's remaining claims be **dismissed without prejudice**.

### I. Background

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 on January 13, 2023, against the MDOC and several individuals employed by the MDOC based on events that occurred while he was incarcerated at the Ionia Correctional Facility (ICF) during January 2021. Following initial review of Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e(c), Plaintiff's remaining claims are his Eighth Amendment failure-to-protect claims against Defendants Toogood and Davis.[1] (ECF Nos. 8 and 9.)

---

[1] Defendant Davis's current last name is Jones. However, consistent with Plaintiff's complaint, I will refer to her by her maiden name, Davis.

1

Plaintiff alleges that on January 12, 2021, Defendant Davis conducted a security classification committee hearing to determine whether Plaintiff was eligible for release from administrative segregation. (ECF No. 1 at PageID.3.) Plaintiff informed Defendant Davis that he did not think he should be released to the yard because of issues he had with other prisoners and that, on one or more occasions, other prisoners had threatened to stab or slice him. (*Id.*) Plaintiff also told Davis that two of the prisoners with whom he had issues were in Unit 5. Nonetheless, Defendant Davis decided to move Plaintiff to Unit 5 and denied his request for protective custody, stating, "Bye Mr. Bailey, I have others to see." (*Id.*)

Plaintiff alleges that on January 14, 2021, after being moved to Unit 5, he told a non-party corrections officer that he would be harmed or would harm someone if he was not moved to protective custody. (*Id.* at PageID.4.) Thereafter, Plaintiff and another prisoner engaged in a heated conversation, which ended with Plaintiff being threatened to be "stabbed or beat-down." (*Id.*) Plaintiff was later informed "during shake down" that "staff were expecting an altercation" in the yard and that Plaintiff should go to the yard and "wait [and] see what happens." (*Id.*) Plaintiff was told that staff would be waiting to intervene so that they could "get all involved parties." (*Id.*) Plaintiff alleges that he heard staff making "wagers." (*Id.* at PageID.4–5.) Plaintiff alleges that Defendant Toogood told him that "he ha[d] [Plaintiff's] back" and asked Plaintiff "what was the worst that could happen in 5 second fights anyway." (*Id.* at PageID.5.)

Plaintiff had been told by the prisoner who had threatened him "to fight or get popped." (*Id.*) After Plaintiff said loudly that he did not want to fight, he looked to Defendant Toogood, but Defendant Toogood did not respond. (*Id.*) Plaintiff therefore fought with another prisoner "for quite some time before Defendant Toogood and his co-workers intervened." (*Id.*) Following the

2

fight, Plaintiff waited nearly two hours to be transported to the hospital for medical attention, where he was diagnosed with a dislocated shoulder. (*Id.* at PageID.6.)

Defendants now assert that Plaintiff's claims must be dismissed because he failed to exhaust his administrative remedies.

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting

3

*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.  Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the

4

prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants attach a Step III Grievance Report dated February 27, 2023, showing grievances arising out of ICF that Plaintiff exhausted through Step III around the time of the events giving rise to his claims. (ECF No. 23-3.) Although Plaintiff filed four grievances in February and March 2021, the only grievance that is relevant to Plaintiff's claims is Grievance ICF-32-02-0257-28e (the 0257 Grievance). In his Step I grievance, filed on February 18, 2021, Plaintiff asserted that on January 14, 2021, he got into a fight on the Unit 5 yard. He stated that during a pat-down on A-base, he was told that staff was expecting an altercation and to just go to the yard where staff would be standing by to intervene. Plaintiff asserted that as he passed by the yard officer (apparently Toogood), the officer told Plaintiff, "I got you," and asked what was the worst that could happen during a five-second fight. Plaintiff further stated that he was pressured into fighting and that the yard officer "just sat there watching," and did not respond. (*Id.* at PageID.136.) The Step I grievance was rejected as untimely. (*Id.* at PageID.137.) Plaintiff filed

5

a Step II appeal on March 1, 2021. (*Id.* at PageID.134.) The Step II respondent upheld the rejection. (*Id.* at PageID.135.) Plaintiff filed a Step III appeal on March 21, 2021. (*Id.* at PageID.134.) The rejection was upheld in a decision issued on June 23, 2021. (*Id.* at PageID.133.)

Defendants contend that the 0257 Grievance did not exhaust any claim against Toogood or Davis. First, they contend that the 0257 Grievance did not exhaust any claim against Defendant Davis because it was directed solely at Defendant Toogood, did not mention or refer to Davis, and was limited to the events that occurred on January 14, 2021, in which Davis was not involved. Second, they argue that the 0257 Grievance did not exhaust any claim against Defendant Toogood because the grievance was rejected as untimely at Step I, and the rejection was upheld at Steps II and III. (ECF No. 23 at PageID.110–11.)

Plaintiff responds that, regarding the rejection, due to the injuries he suffered in the fight, he was unable to write, lift, or extend his dominant hand to prepare his grievance or otherwise pursue the grievance process. He asserts that he should have been exempt from the five-day time limit set forth in paragraph Q of the grievance process. In addition, Plaintiff asserts that his grievance should have been considered timely under paragraph J.5., which provides that "[t]he grievance shall not be rejected if there is a valid reason for the delay; e.g., transfer." (ECF No. 30 at PageID.167.) Plaintiff also asserts that in rejecting his Step I grievance as untimely, the temporary grievance coordinator erred in applying the grievance policy due to his lack of knowledge regarding his new position. (*Id.* at PageID.167–68.) As for Defendant Davis, Plaintiff admits that she was not named in the grievance, but he points out that he also did not identify Toogood by name. Plaintiff contends that his reference to "staff" in the Step I grievance sufficed to identify Davis. (*Id.* at 169–70.)

6

I first conclude that the 0257 Grievance failed to exhaust Plaintiff's claim against Defendant Toogood because it was properly rejected as untimely. Although Plaintiff now contends that his injuries prevented him from filing a timely grievance, he failed to include this information in either his Step II or Step III appeals. In his Step II appeal, Plaintiff simply stated, "Grievance was rejected in violation of P.D. 03.02.130. Reason for denial was not sufficient to grievance being filed according to procedure." (ECF No. 23-3 at PageID.134.) In his Step III appeal, Plaintiff stated:

> Grievant went through the proper chain of command of the facility by informing administration what was going on. Grievant gave each an alotted [sic] time to respond yet there wasn't any acknowledgement of any kind. Grievant then moved on to the writing of a grievance. It should not have ben deemed untimely due to the fact of the grievant simply following procedure precisely.

(*Id.*)

Citing the Sixth Circuit's unpublished order in *Jones v. Bonevelle*, No. 11-2242 (6th Cir. Mar. 30, 2012), which affirmed a dismissal on exhaustion grounds by a judge in this district,[2] Defendants contend that Plaintiff should have raised his physical inability to timely pursue his grievance during the grievance process itself rather than asserting it for the first time in this action. In *Jones*, the plaintiff's grievance was rejected because he did not attempt to resolve the issue with the defendant before filing his Step I grievance. He also failed to explain why he did not comply with this requirement in his Step II and III appeals. Before the district court, however, the plaintiff argued that he attempted to resolve the issue with the defendant by sending him a kite one day prior to filing his grievance, and he submitted a copy of the alleged kite in response to the defendant's motion for summary judgment. The Sixth Circuit held that the district court properly

---

[2] *Jones v. Bonevelle*, No. 2:08-cv-133 (W.D. Mich.) (Bell, J.). The Sixth Circuit's March 30, 2012 Order is docketed as ECF No. 63.

7

found the plaintiff's claim unexhausted because the plaintiff should have made his improper rejection argument during the grievance process rather than in his civil action.

In this case, while Plaintiff claimed that the rejection was improper, he made only conclusory statements in his Step II and III appeals that his grievance was improperly rejected. He wholly failed to explain why the rejection was improper so as to afford the grievance coordinator an opportunity to determine whether Plaintiff had a valid basis for filing a grievance beyond the five-day period. Thus, as in *Jones*, Plaintiff failed to properly exhaust his administrative remedies as to his claim against Defendant Toogood. *See Luttman v. McQuiggin*, No. 2:12-CV-25, 2013 WL 623049, at * (W.D. Mich. Feb. 20, 2013) ("[B]ecause Plaintiff did not indicate at any stage of the grievance process that he received the Step II form after the expiration of the deadline for submitting it, the MDOC was correct to find Plaintiff's Step II grievance untimely and unexcused despite his transfer."). Incidentally, this conclusion likewise renders the claim against Defendant Davis unexhausted because even if Plaintiff had properly identified Davis in his grievance through his reference to "staff," the grievance would have been unexhausted to her as well because it was rejected as untimely.

I also conclude that Plaintiff failed to exhaust his claim against Defendant Davis by not naming her in the grievance. A prisoner generally does not properly exhaust a grievance under Policy Directive 03.02.130 when the grievance fails to include the names of all those involved in the issues being grieved. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). However, the Sixth Circuit has recognized that prison officials may be deemed to have waived this requirement by considering the merits of a grievance that fails to name all individuals being grieved. *Id.* at 325. *See also Mattox v. Edelman*, 851 F.3d 583, 590–91 (6th Cir. 2017) (noting that a prisoner ordinarily does not properly exhaust his administrative remedies where he does not

8

specify in the grievance the names of all those from whom he seeks relief, although "prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits"). The waiver rule enunciated in *Reed-Bey* does not apply here because prison officials did not consider the grievance on the merits; rather, it was rejected at all three steps. *See Cook v. Caruso*, 531 F. App'x 554, 563 (6th Cir. 2013) ("For *Reed–Bey*'s holding to apply, Cook would have had to receive 'merits-based responses at each step.'") (emphasis in original). More importantly, Plaintiff's reference to "staff" in his grievance would not have put prison officials on notice that he was grieving Davis's conduct, as she was the acting Assistant Deputy Warden rather than custody staff. Similarly, the conduct Plaintiff described in his grievance would not have alerted prison officials that Defendant Davis was involved in the conduct of which Plaintiff complained. Plaintiff was complaining about events that occurred on January 14, 2021—two days after Davis determined that Plaintiff should be released from administrative segregation—and it is undisputed that Davis was not present during the January 14, 2021 events described in the grievance.

## IV.   Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' motion (ECF No. 22), **dismiss** Plaintiff's remaining Eighth Amendment claims **without prejudice**, and close the case.

Dated: July 9, 2024         /s/ Sally J. Berens
                                                                                       SALLY J. BERENS
                                                                                       U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).